**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3590-15T2
A-5213-15T2
A-1177-16T2

BELLA FRANGIPANE,

    Plaintiff-Appellant,

v.

RICHARD FRANGIPANE,

    Defendant-Respondent.

_____

        Submitted August 22, 2017 — Decided September 1, 2017

        Before Judges Manahan and Gilson.

        On appeal from Superior Court of New Jersey,
        Chancery Division, Family Part, Bergen County,
        Docket No. FM-02-1092-96.

        Bella Frangipane, appellant pro se.

        Kantrowitz, Goldhamer & Graifman, PC,
        attorneys for respondent (William T.
        Schiffman, on the brief).

PER CURIAM

    In these back-to-back appeals consolidated for the purpose

of this opinion, plaintiff Bella Frangipane appeals from post-

judgment Family Part orders.  In light of our standard of review and the deference afforded to Family Part judges, we affirm.

The parties were married in January 1973, and divorced in July 1997.  The parties have one child.  The parties' entered into a marital settlement agreement (MSA) on July 9, 1997, which encompassed, among other issues, the equitable distribution of assets, alimony, and child-related issues such as custody, visitation and child support.[1]

On April 3, 2004, the parties agreed to a modification of the MSA wherein payment of all sums owed to plaintiff of a marital asset, the FC Capital Accumulation Account (FCCAA), was paid in full except for 1258 shares in Merrill Lynch.

I.

We commence by reciting the procedural history of post-judgment motion practice engaged in by the parties.

In July 2015, defendant filed a motion seeking various relief, including the termination or reduction in his alimony obligation to plaintiff.  Plaintiff opposed the motion and filed a cross-motion, which was opposed by defendant.  After oral argument, two orders were entered on August 11, 2015, referring the parties to

---

[1] The child resided with plaintiff until the child's eighteenth birthday in June 2013.  She then resided with defendant.

attend economic mediation, establishing pendente lite child support from plaintiff to defendant in the amount of forty dollars per week, and scheduling the matter for a case management conference (CMC) and intensive settlement conference. Although the parties participated in mediation, the matters in difference were not resolved.

In September 2015, plaintiff filed a motion seeking specified financial documents from defendant. Defendant opposed the motion.

Three months later, subsequent to oral argument on the pending motions, an order was entered which, among other matters, decreased defendant's alimony obligation. Plaintiff filed a motion for reconsideration. Oral argument was held and an order denying plaintiff's motion was entered on March 21, 2016.

Plaintiff filed a notice of appeal. Upon receiving notice of the appeal, the judge supplemented the record by letter pursuant to Rule 2:5-1(b).

Additional motion practice continued. Plaintiff filed a motion seeking an interest in the retirement fund known as the Metropolitan Annuity (Annuity), which was part of the equitable distribution under the MSA. Defendant opposed the motion and submitted a cross-motion for attorney's fees. Plaintiff filed a reply. The judge entered an order on April 25, 2016, that, in part, granted plaintiff authority to hire a forensic accountant

to assess whether the Annuity had any value at the time the divorce complaint was filed.

Thereafter, defendant filed a motion for reconsideration. In response, plaintiff filed a cross-motion to compel defendant to pay fifty-percent of the alleged value of the Annuity. On June 29, 2016, the judge granted defendant's motion for reconsideration and vacated the April 25, 2016 order. Plaintiff filed a notice of appeal.

In August 2016, plaintiff filed a motion seeking recalculation of the FCCAA distribution. Defendant filed a cross-motion. After oral argument, an order was entered on October 11, 2016, which, in part, denied plaintiff's motion requesting the judge's recusal, and denied plaintiff's motion for recalculation of the FCCAA distribution. Plaintiff filed a notice of appeal.

II.

We initially recite our standard of review that governs our analysis on these appeals.

The scope of our review of the Family Part's orders is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). We owe substantial deference to the Family Part's findings of fact because of that court's special expertise in family matters. Id. at 413. Thus, "[a] reviewing court should uphold the factual findings undergirding the trial court's decision if they are supported by

adequate, substantial and credible evidence on the record." MacKinnon v. MacKinnon, 191 N.J. 240, 253-54 (2007) (alteration in original) (quoting N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007)). "That deference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" Id. at 254 (quoting Cesare, supra, 154 N.J. at 412).

While we owe no special deference to the judge's legal conclusions, Manalapan Realty, L.P. v. Township Committee of Manalapan, 140 N.J. 366, 378 (1995), "we 'should not disturb the factual findings and legal conclusions of the trial judge unless . . . convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice' or when we determine the court has palpably abused its discretion." Parish v. Parish, 412 N.J. Super. 39, 47 (App. Div. 2010) (alteration in original) (quoting Cesare, supra, 154 N.J. at 412).

We will only reverse the judge's decision when it is necessary to "'ensure that there is not a denial of justice' because the family court's 'conclusions are [] "clearly mistaken" or "wide of the mark."'" Id. at 48 (alteration in original) (quoting N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008)).

The scope of review for a denial of a motion for reconsideration is abuse of discretion. Cummings v. Bahr, 295 N.J. Super. 374, 389 (App. Div. 1996). Reconsideration is "a matter within the sound discretion of the [c]ourt, to be exercised in the interest of justice[.]" Palombi v. Palombi, 414 N.J. Super. 274, 288 (App. Div. 2010) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)). Governed by Rule 4:49-2, reconsideration is appropriate for a "narrow corridor" of cases in which either the court's decision was made upon a "palpably incorrect or irrational basis," or where "it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." Ibid. (quoting D'Atria, supra, 242 N.J. Super. at 401). We also maintained:

> Alternatively, if a litigant wishes to bring new or additional information to the Court's attention which it could not have provided on the first application, the Court should, in the interest of justice (and in the exercise of sound discretion), consider the evidence. Nevertheless, motion practice must come to an end at some point, and if repetitive bites at the apple are allowed, the core will swiftly sour. Thus, the Court must be sensitive and scrupulous in its analysis of the issues in a motion for reconsideration.
>
> [Cummings, supra, 295 N.J. Super. at 384 (quoting D'Atria, supra, 242 N.J. Super. at 401-02).]

The denial of a motion seeking recusal is reviewed under an abuse of discretion standard. State v. McCabe, 201 N.J. 34, 45 (2010) (citing Panitch v. Panitch, 339 N.J. Super. 63, 71 (App. Div. 2001)). The disposition of a recusal motion is entrusted to the "sound discretion" of the judge whose recusal is sought. Pressler & Verniero, Current N.J. Court Rules, comment on R. 1:12-2 (2017) (citing Chandok v. Chandok, 406 N.J. Super. 595, 603 (App. Div.), certif. denied, 200 N.J. 207 (2009)).

## III.

In A-3590-15, plaintiff appeals the March 21, 2016 order denying her motion for reconsideration. The motion related to a December 3, 2015 order that required plaintiff to pay $40 per week to defendant in child support, pay 25% of the child's current and future college expenses totaling $18,000, lowered defendant's alimony obligation from $900 to $700 per week, and other relief.

The reconsideration order denied plaintiff's request to vacate the December 3, 2015 order regarding defendant's alimony obligation. It also denied plaintiff's request to compel defendant to amend his case information statement (CIS) and to produce additional financial statements. The order further maintained plaintiff's obligation to contribute to the child's college expense, vacated defendant's child support obligation, and denied a plenary hearing and an award of counsel fees.

In reaching our determination, we initially address the issues subject to our review. In plaintiff's notice of appeal and CIS, she specifically designates the March 21, 2016 order as that being appealed. Thereafter, in plaintiff's merit brief, she raised as points on appeal: (1) harmful error in that she was not informed that the issue of alimony would be the subject of the November 10, 2015 hearing, believing it would be a CMC; (2) the judge erred regarding the alimony reduction and evidentiary decisions; and (3) the judge was biased. In response, defendant argued that only those matters addressed denying the motion for reconsideration in the order under appeal are reviewable by this court. We agree and limit our review to the "four corners" of the order and the letter supplementing the order per Rule 2:5-1(b).

Under Rule 2:5-1(f)(3)(A), "[i]t is only the orders designated in the notice of appeal that are subject to the appeal process and review." Petersen v. Meggitt, 407 N.J. Super. 63, 68 n.2 (App. Div. 2009) (alteration in original) (citations omitted). Therefore, where a notice of appeal designates only the order denying reconsideration, and not the order of which reconsideration was sought, that original order "is not before us for review," and we address only the order denying reconsideration. Fusco v. Newark Bd. of Educ., 349 N.J. Super. 455, 461-62 (App.

Div.) (citation omitted), certif. denied, 174 N.J. 544 (2002); see also R. 2:4-3(e).

Although this court, in the exercise of its discretion, may consider issues not addressed in the notice of appeal, we discern no basis to exercise that discretion here. Unlike in other cases where we have exercised discretion, here, the issues related to matters other than the reconsideration order were not fully briefed on appeal. See Calcaterra v. Calcaterra, 206 N.J. Super. 398, 402-03 (App. Div. 1986). As such, we hew to our proscribed scope of review and address only those matters implicated by the order denying reconsideration. Fusco, supra, 349 N.J. Super. at 462.

As noted, subsequent to the appeal, pursuant to Rule 2:5-1(b), the judge provided a letter supplementing the record. The judge augmented the bases for his holding decreasing defendant's alimony obligation premised upon the statutory factors set forth in N.J.S.A. 2A:34-23.[2] The judge held:

> The first factor, found in N.J.S.A. 2A:34-23(k)(1) is the reason for any loss of income. Defendant obligor turned [seventy-four] years old on January 27, 2016. Due to his increased age, the defendant alleged that

---

[2] Effective September 10, 2014, the Legislature amended N.J.S.A. 2A:34-23 to add a new subsection (j). Subsection (j) lists objective considerations a court must examine and weigh when reviewing an obligor's request to modify or terminate alimony when an obligor retires. L. 2014, c. 42, § 1. Here, defendant had not retired. Thus, the judge applied the factors set forth in subsection (k). N.J.S.A. 2A:34-23 (k).

he was unable to work [forty-hour] weeks and provided a copy of his recent paystubs which indicated that he was working part-time hours. Defendant could have retired and received full retirement benefits eight years ago, yet defendant continues to work.

The judge then noted the issues relating to defendant's health:

> The defendant also states that his health has been deteriorating over the years. Defendant provided a lengthy list of diagnoses and medications prescribed by Dr. Salvatore Focella, M.D. Although the documentation provided was from 2011, the [c]ourt, taking into consideration defendant's age, found defendant's proofs on this issue to be credible.

> Although the defendant is over the age of full retirement and suffers from medical issues, he continues to work and earns an above-average salary.

The judge next addressed the issue of equitable distribution:

> The [c]ourt is aware that defendant's assets have allegedly continued to grow since the date of the 1997 divorce. Plaintiff received an equal, substantial amount of equitable distribution and, as plaintiff freely admits, she used most, if not all of it. However, defendant should not be penalized for making smart investment decisions with his respective share of equitable distribution while plaintiff spent all of hers arguably on her self-owned failing business.

The judge then addressed the source of income for plaintiff:

> Under N.J.S.A. 2A:34-23(k)(4), the [c]ourt has to look at the income of the

> obligee, the obligee's circumstances, and the obligee's reasonable efforts to obtain employment. Plaintiff owns and operates her own business, which, as plaintiff admits, is a failing investment as plaintiff continues to lose money. In 2014, plaintiff listed the sum of $19,297 as her business income loss on her tax returns. The [c]ourt is aware that plaintiff is [sixty-nine] years old and also suffers from some medical problems, although no corroborating documentation has been provided to this [c]ourt. Although it may be difficult for the plaintiff to seek gainful employment, if plaintiff simply terminates her business, her income would increase by approximately $20,000 per year. This [c]ourt further imputed the sum of $20,000 per year to the plaintiff as the [c]ourt felt that plaintiff has the ability to maintain a minimum wage job.

The judge concluded by noting both parties are over the age of retirement.[3]

Alimony "may be revised and altered by the court from time to time as circumstances may require." N.J.S.A. 2A:34-23. To make such a modification, the movant must show "changed circumstances." Lepis v. Lepis, 83 N.J. 139, 146 (1980) (citation omitted). Temporary or anticipated circumstances do not warrant modification. Id. at 151. Rather, "[t]he party seeking modification has the burden of showing such 'changed circumstances' as would warrant relief from the support or

---

[3] As the judge aptly noted during oral argument, the MSA was silent as to whether alimony was "permanent" or for a "fixed term."

maintenance provisions involved." Id. at 157 (citing Martindell v. Martindell, 21 N.J. 341, 353 (1956)).

"There is . . . no brightline rule by which to measure when a changed circumstance has endured long enough to warrant a modification of a support obligation. Instead, such matters turn on the discretionary determinations of Family Part judges, based upon their experience . . . [and all] relevant circumstances presented[.]" Donnelly v. Donnelly, 405 N.J. Super. 117, 128 (App. Div. 2009) (quoting Larbig v. Larbig, 384 N.J. Super. 17, 23 (App. Div. 2006)). "Each and every motion to modify an alimony obligation 'rests upon its own particular footing and the appellate court must give due recognition to the wide discretion which our law rightly affords to the trial judges who deal with these matters.'" Larbig, supra, 384 N.J. Super. at 21 (quoting Martindell, supra, 21 N.J. at 355). Furthermore, since the Family Part has special expertise in family matters and has had the opportunity to hear and see the witnesses testify firsthand, its findings of fact should be accorded deference on appeal. Cesare, supra, 154 N.J. at 412-13. Thus, an alimony modification will not be overturned on appeal absent an abuse of discretion:

> To vacate a trial court's findings in a proceeding modifying alimony, an appellate court must conclude that the trial court clearly abused its discretion, failed to consider "all of the controlling legal

principles," or it must otherwise be "well satisfied that the finding[s] [were] mistaken," or that the determination could not "reasonably have been reached on sufficient credible evidence present in the record after consideration of the proofs as a whole."

[Rolnick v. Rolnick, 262 N.J. Super. 343, 360 (App. Div. 1993) (internal citations omitted).]

Retirement may constitute a change in circumstances warranting a modification or elimination of alimony. See, e.g., Silvan v. Sylvan, 267 N.J. Super. 578, 581 (App. Div. 1993); Deegan v. Deegan, 254 N.J. Super. 350, 358-59 (App. Div. 1992). The court's analysis differs depending on whether the retirement was voluntary or involuntary. See Deegan, supra, 254 N.J. Super. at 355-56. "Where the change is involuntary, all that is required is an analysis of the . . . parties' financial circumstances." Id. at 355. When the change is voluntary, courts consider a number of factors, including the age and health of the retiring party, whether the retirement was made in good faith, the retiring spouse's ability to pay alimony following the retirement, the expectation of the parties at the time the MSA was executed, and the ability of the dependent spouse to provide for him or herself. Id. at 357-58. After reviewing these factors, the court must determine "whether the advantage to the retiring spouse

13

substantially outweighs the disadvantage to the payee spouse."
Id. at 358.

Applying these principles, we are satisfied the trial court did not abuse its discretion in finding there was a change in circumstances sufficient to modify defendant's alimony obligation.

Regarding plaintiff's argument that a plenary hearing was required, in footnotes within the order, the judge noted plaintiff's argument that on the hearing date of the motion there was going to be a CMC, and that the issues would be decided after a plenary hearing. The judge rejected both arguments. We discern no basis for error in those determinations.

First, the judge held, and we agree, that plaintiff was duly notified as to the nature of the hearing prior to the return date. While plaintiff may have misunderstood what was to occur, that misunderstanding was not the product of either the defendant's or the judge's conduct. Further, the hearing record evidences that plaintiff suffered no prejudice by her "misunderstanding" as she was able to provide arguments in opposition to the relief sought by defendant.

Second, in deciding whether to conduct a plenary hearing, a critical factor is "whether the movant has made a prima facie showing that a plenary hearing is necessary." Hand v. Hand, 391 N.J. Super. 102, 106 (App. Div. 2007). This analytic factor was

crafted with an eye to judicial economy, given that "practically every dispute in the matrimonial motion practice involves a factual dispute of some nature[.]" Klipstein v. Zalewski, 230 N.J. Super. 567, 576 (Ch. Div. 1988). "An inflexible rule requiring a plenary hearing" on every matrimonial application "would impede the sound administration of justice, impose an intolerable burden upon our trial judges, and place an undue financial burden upon litigants." Shaw v. Shaw, 138 N.J. Super. 436, 440 (App. Div. 1976). Since we conclude that there were no facts in dispute relative to the request to modify alimony, a plenary hearing was not required.

IV.

In A-5213-15, plaintiff appeals an order dated June 29, 2016, granting defendant's motion for reconsideration and vacating a prior order dated April 25, 2016. The orders concerned the MSA executed during the divorce proceedings in 1997. Specifically, the appeal is related to the Annuity that plaintiff claims was improperly distributed. After considering the record, we are satisfied that the arguments raised in this appeal are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). We affirm substantially for the reasons stated by the judge in the June 29, 2016 order. We add only the following.

The order under review included an explanatory footnote. The footnote stated that the Family Part did not comprehend the nature

of plaintiff's original motion, however, upon reconsideration, it was apparent that plaintiff was aware of the existence of the Annuity as of 1996. The footnote also stated that the judge found no fraud or deceit on behalf of defendant.

Given both the deference afforded to Family Part judges regarding issues of credibility, as well as our consideration of the record, we concur that there was ample support for the holding that plaintiff had knowledge of the Annuity at the time of the divorce and that defendant did not engage in acts of fraud or deception. See Cesare, supra, 154 N.J. at 411-12.

V.

In A-1177-16, plaintiff appeals the denial of a motion for recusal and paragraph two of the October 11, 2016 order. Paragraph two referenced the distribution of the FCCAA that plaintiff challenged as the product of defendant's fraudulent misrepresentation which she argues required a re-accounting of the distribution.

Having considered plaintiff's arguments in light of the record, we conclude they lack sufficient merit to require discussion in a written opinion. R. 2:11-3(e)(1)(E). We affirm substantially for the reasons stated by the judge on the record and add only the following.

Plaintiff contends that the judge erred by denying her motion for his recusal. She argues that the judge was required to recuse himself because of his preconceptions of the parties' intentions, which influenced his decisions.[4]

Rule 1:12-1 provides that a judge shall be disqualified and precluded from sitting on certain matters, including those in which there is "any . . . reason which might preclude a fair and unbiased hearing and judgment, or which might reasonably lead counsel or the parties to believe so." R. 1:12-1(g). Under the rule, a judge is disqualified from a matter if an individual, who observes the judge's conduct, would have "a reasonable basis to doubt the judge's integrity and impartiality[.]" In re Reddin, 221 N.J. 221, 223 (2015).

Pursuant to the circumstances presented here, we conclude that an individual, aware of the relevant facts, would have no reasonable basis to doubt the judge's integrity or his ability to handle the matter impartially. "[A] judge need not 'withdraw from a case upon a mere suggestion that he is disqualified unless the alleged cause of recusal is known by him to exist or is shown to be true in fact.'" Chandok, supra, 406 N.J. Super. at 603 (quoting Panitch, supra, 339 N.J. Super. at 66); see also Strahan v.

---

[4] Plaintiff included more than one request for the judge to recuse himself.

Strahan, 402 N.J. Super. 298, 318 (App. Div. 2008) ("Bias cannot be inferred from adverse rulings against a party.").

We regard plaintiff's argument that she was owed 500 shares from the FCCAA as without basis. Stated succinctly, there is substantial credible evidence within the record that supports the judge's finding that all shares of the FCCAA due plaintiff per the MSA were appropriately distributed to her. See Parish, supra, 412 N.J. at 47. On the other hand, there is no proof that defendant engaged in fraud or deceit relative to that distribution. Ibid.

## VI.

Plaintiff's remaining arguments raised on these three appeals, not specifically addressed herein, lack sufficient merit to require discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION