**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0756-20

STEPHANIE MESSNER,

      Plaintiff-Appellant/
      Cross-Respondent,

v.

MIKLOS HAJDU-NEMETH,

      Defendant-Respondent/
      Cross-Appellant.

_____

      Submitted February 14, 2022 – Decided March 17, 2022

      Before Judges Vernoia and Firko.

      On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Somerset County, Docket No. FD-18-0340-01.

      Jared A. Geist, attorney for appellant/cross-respondent.

      George G. Gussis, attorney for respondent/cross-appellant.

PER CURIAM

In this appeal and cross-appeal, plaintiff Stephanie J. Messner, the mother of two daughters born in September 2000 and November 2004, appeals from paragraphs six and eleven of an October 7, 2020 non-dissolution Family Part order entered by Judge Haekyoung Suh. Judge Suh denied plaintiff's motion to vacate an April 12, 2019 order entered by a previous judge granting, in part, defendant/father Miklos J. Hajdu-Nemeth's motion in aid of litigant's rights seeking to enforce a July 25, 2017 judgment. Defendant cross-appeals from Judge Suh's denial of his cross-motion seeking to impute income to plaintiff for purposes of re-calculation of her child support obligation and denial of his request for counsel fees.

I.

The parties are familiar with the procedural history and facts of this case, and therefore, they will not be repeated in detail here.[1] We briefly summarize the facts pertinent to this appeal from the record. The parties cohabitated from 1999 until 2005. Their first-born daughter is now emancipated; the younger daughter is almost seventeen-and-a-half years old. During their relationship,

---

[1] The chronology is set forth in this court's unpublished opinion entered on February 20, 2019, in which we affirmed the July 25, 2017 judgment. See Messner v. Hajdu-Nemeth, No. A-5607-16 (Feb. 20, 2019). We incorporate, by reference, the facts stated in our prior opinion.

plaintiff became a registered nurse but did not disclose that fact to defendant until two years later. Defendant claims he left plaintiff and the children but allowed them to reside in his home with expenses paid by him. Plaintiff filed a palimony complaint, which was resolved, in part, by way of a consent order dated October 20, 2008. Plaintiff moved with the parties' two daughters from Somerset to Union County after becoming involved in another relationship. She filed a motion to change venue from Somerset County to Union County even though defendant continued to reside in Somerset County.

Defendant then filed a cross-motion seeking to be named parent of primary residence (PPR). After a plenary hearing, a previous judge granted defendant's cross-motion to become PPR and designated plaintiff as the parent of alternate residence (PAR) in the July 25, 2017 judgment. The judgment also provided in pertinent part, a parenting time schedule; appointed attorney Amy Shimalla as the parent coordinator (PC); terminated defendant's child support obligation effective August 17, 2016; and ordered plaintiff to pay $79.00 per week in child support, as calculated by the child support guidelines, through the Somerset County probation department.

Thereafter, plaintiff claimed she had a conflict of interest with PC Shimalla, resulting in an order being entered by Judge Bradford M. Bury on

3

February 5, 2019, appointing Laurie Poppe as the successor PC in the event the parties could not agree upon a new PC. Other relief not germane to these appeals was also awarded.

On April 12 and 18, 2019, Judge Bury entered orders addressing the remaining relief sought by plaintiff and, in pertinent part:

> (1) denied plaintiff's request to vacate the cost-of-living (COLA) increase imposed after one year rather than two years;
>
> (2) denied plaintiff's request for a COLA increase credit to be paid by defendant;
>
> (3) denied plaintiff's request to decrease child support;
>
> (4) denied plaintiff's request for make-up parenting time;
>
> (5) granted defendant's request to hold plaintiff in violation of litigant's rights for failure to pay parochial school tuition as ordered in the July 25, 2017 judgment;
>
> (6) ordered plaintiff to file a completed matrimonial case information statement (CIS) with required financial attachments; and
>
> (7) denied defendant's request for counsel fees.

On September 12, 2019, Judge Kimarie Rahill entered an order emancipating the older daughter and modifying plaintiff's child support obligation for the

4

younger daughter to $82.00 per week, plus arrearages of $35.00 per week, for a total weekly support obligation of $117.00, effective September 13, 2019.

Sometime in 2020,[2] plaintiff filed a motion to vacate paragraphs 20 and 22 of the April 12, 2019 order claiming Judge Bury erred in finding defendant overpaid child support in the amount of $1,204.17, when in fact, she claimed he was in arrears $4,490.88 as of January 2017. As to paragraph 22, plaintiff argued she was mandated to pay $8,680.25 for parochial school tuition for the older daughter without explanation, representing her 25% share. Defendant agreed to pay 75% of the parochial school tuition. Plaintiff contended defendant and his spouse decided to enroll the daughters in parochial school without her consent and that she erroneously was ordered to pay 50% of the parochial school costs.

Defendant opposed plaintiff's motion and asserted she received copies of tuition payments evidencing the $8,680.25 amount was based on plaintiff's 25% share. In addition, defendant denied enrolling the children in parochial school unilaterally and claimed it was plaintiff who "committed them to parochial schools." Defendant contended he paid a total of $34,721.00 for the children's parochial school tuition over the course of two academic years. He also argued

_____

[2] The record does not reflect the date plaintiff's motion was filed.

A-0756-20

plaintiff's motion was time-barred under <u>Rule</u> 4:50-1 and should be treated as a motion for reconsideration.[3]

Defendant filed a notice of cross-motion seeking to hold plaintiff in violation of litigant's rights for her failure to comply with the July 25, 2017 judgment and the April 12, 2019 order for not providing proof of life insurance;[4] failing to pay her 25% share of parochial school tuition; continuing to discuss the litigation and disparaging him to the children; failing to submit a complete

---

[3] <u>Rule</u> 4:49-2 provides for motions to alter or amend a judgment or order and states:

> Except as otherwise provided by <u>R[ule]</u> 1:13-1 (clerical errors) a motion for rehearing or reconsideration seeking to alter or amend a judgment or order shall be served not later than [twenty] days after service of judgment or order upon all parties by the party obtaining it. The motion shall state with specificity the basis on which it is made, including a statement of the matters or controlling decisions which counsel believes the court has overlooked or as to which it has erred, and shall have annexed thereto a copy of the judgment or order sought to be reconsidered and a copy of the court's corresponding written opinion, if any.

[4] Paragraph ten of the July 25, 2017 judgment directed both parties to maintain life insurance policies in the amount of $100,000.00 naming the daughters as equal beneficiaries and the other party as trustee. The record shows defendant complied, but plaintiff did not.

A-0756-20

CIS; requiring plaintiff to bring her child support arrearages current; and for counsel fees and costs.

On July 23, 2020, Judge Suh conducted oral argument on the motions and reserved decision. In her thirty-page written decision, Judge Suh denied plaintiff's motion to vacate the April 12, 2019 order, finding Judge Bury did not err in adding $1,204.17 to plaintiff's child support arrearages instead of directly reimbursing defendant. Judge Suh also found plaintiff "has furnished no evidence to demonstrate that in January 2019 defendant had $4,490.88 in arrears" and failed to demonstrate "fraud on defendant's part." Additionally, Judge Suh found plaintiff did not meet her burden under Rule 4:50-1 to vacate her parochial school tuition contribution as provided in the July 25, 2017 judgment, which was agreed to by consent of the parties.

As to defendant's cross-motion, Judge Suh found "[i]t is undisputed that plaintiff has failed to provide proof of her life insurance policy to defendant" and "[t]hree years had passed" since she was ordered to do so. Judge Suh ordered plaintiff to obtain the requisite life insurance policy within thirty days otherwise "economic sanctions" would be imposed "unless she can prove she is not eligible." Plaintiff was also deemed in violation of litigant's rights for failing to pay defendant 25% of their daughters' parochial school tuition.

A-0756-20

The judge denied defendant's request to suspend parenting time, noting the older daughter is now "twenty years old" and "the court's custody and parenting time decision does not apply to her." As to the younger daughter, Judge Suh found defendant did not demonstrate a substantial change in circumstances warranting suspension of parenting time "simply because plaintiff refused to utilize the [PC]."

On the issue of child support, the judge noted three years had passed since the last calculation and there were changed circumstances—namely, the older daughter was over nineteen years old, not attending high school or a post-secondary education institution full-time, and not physically or mentally disabled. Therefore, the older daughter was no longer entitled to child support under N.J.S.A. 2A:17-56.67(a).[5] Utilizing the child support guidelines for the

---

[5] N.J.S.A. 2A:17-56.67 provides:

> a. Unless otherwise provided in a court order, judgment, or court-approved preexisting agreement, the obligation to pay current child support or provide medical support, or both for a child shall terminate by operation of law without order by the court on the date that a child marries, dies, or enters the military service. In addition, a child support obligation shall terminate by operation of law without order by the court when a child reaches [nineteen] years of age unless:

(1) another age for the termination of the obligation to pay child support, which shall not extend beyond the date the child reaches [twenty-three] years of age, is specified in a court order or judgment;

(2) the child suffers from a severe mental or physical incapacity that causes the child to be financially dependent on a parent, in consideration of the factors set forth in N.J.S.A. 2A:34-23, and the continuation of the obligation to pay support for that child is specified in a court order or judgment;

(3) a written request seeking the continuation of child support services is submitted to the court by a custodial parent prior to the child reaching the age of [nineteen] in accordance with subsection b. of this section and such request is approved by the court; or

(4) the child receiving support is in an out-of-home placement through the Division of Child Protection and Permanency in the Department of Children and Families.

b. (1) In response to a notice of proposed termination of child support issued in accordance with subsection d. of this section, a custodial parent may submit a written request, on a form and within timeframes promulgated by the Administrative Office of the Courts, with supporting documentation to the court, including a projected future date when support will terminate, seeking the continuation of child support services beyond the date the child reaches [nineteen] years of age in the following circumstances:

A-0756-20

younger daughter, plaintiff's reported 2019 annual income of $50,883.00, and defendant's Social Security Disability income of $2,300.00 monthly plus his business income, adjusted under Appendix IX-B, the judge calculated the new child support obligation to be $95.00 per week. The judge denied defendant's request to impute income to plaintiff.

On the issue of counsel fees and costs, the judge denied defendant's application based on "plaintiff's inability to pay and her current unemployment." A memorializing order was entered.

Plaintiff raises the following issues on appeal:

POINT I:

THE UNSIGNED APPLICATION OF MICHAEL BOWDEN ON BEHALF OF [DEFENDANT] WAS

---

(a) the child is still enrolled in high school or other secondary educational program;

(b) the child is a student in a post-secondary educational program and is enrolled for the number of hours or courses the school considers to be full-time attendance during some part of the academic year; or

(c) the child has a physical or mental disability, as determined by a federal or State government agency, that existed prior to the child reaching the age of [nineteen] and requires continued child support.

IMPROPER AND SHOULD NOT HAVE BEEN ALLOWED.

POINT II:

[DEFENDANT] NEVER MET THE BURDEN TO SHOW A CHANGE IN CIRCUMSTANCES.

POINT III:

THERE SHOULD HAVE BEEN A PLENARY HEARING BUT THERE WAS NOT.

POINT IV:

THE COURT IMPROPERLY APPLIED A COLA INCREASE IN VIOLATION OF NEW JERSEY COURT RULE 5:3.

POINT V:

THE CHANGE OF VENUE WAS NOT ADDRESSED.

POINT VI:

THE ISSUE OF THE [PC] WAS NOT PROPERLY ADDRESSED.

POINT VII:

THE ORDER SHOULD HAVE BEEN VACATED BY COURT RULE 4:50 BUT WAS NOT.

POINT VIII:

CONSTITUTIONAL VIOLATIONS (Not addressed below).

A-0756-20

POINT IX:

VIOLATION OF PRIOR COURT ORDERS.

POINT X:

[THE PRIOR JUDGE] DELEGATES ADJUDICATION TASK TO UNQUALIFIED PERSON SERVING IN THE CAPACITY AS A [PC] TO ENFORCE THE COURT ORDERS INSTEAD OF HIM AS A JUDGE.

Defendant raises the following issues in his cross-appeal:

POINT I:

IT WAS AN ERROR OF THE COURT NOT TO IMPUTE INCOME OF $80,210[.00] TO [PLAINTIFF].

POINT II:

IT WAS ERROR OF THE COURT TO DENY [DEFENDANT]'S COUNSEL FEE REQUEST AFTER FINDING THAT FACTORS [THREE], [FOUR], [SIX], [SEVEN], AND [EIGHT] FAVORED [DEFENDANT]'S APPLICATION FOR COUNSEL FEES.

Having carefully reviewed the record, we affirm primarily for the reasons expressed in the thorough opinion of Judge Suh issued with the order under review. R. 2:11(e)(1)(E). We add the following remarks.

12

II.

A.    Plaintiff's Appeal

From the onset, we note plaintiff challenges orders dating back to 2008 and every judicial action taken since that time. To reiterate, we affirmed the July 25, 2017 judgment, and plaintiff never appealed Judge Bury's orders. Even giving plaintiff the most indulgent presumption, Points I, II, IV, V, VI, VII, and X raised in her brief are time-barred pursuant to Rule 2:4-1(a)[6] because the forty-five-day time limit to file an appeal as to these issues has long expired. Rule 2:4-3(e) permits tolling of the forty-five-day limit if a "timely" motion for reconsideration as filed with the Family Part. The record shows no such motion was filed in the matter under review. Therefore, we are constrained to dismiss plaintiff's untimely appeal as it pertains to Points I, II, IV, V, VI, VII, and X because we lack jurisdiction. See Ricci v. Ricci, 448 N.J. Super. 546, 565 (App. Div. 2017).

As to the merits of plaintiff's other points, our review of a Family Part judge's fact finding is limited. N.J. Div. of Youth & Fam. Servs. v. I.H.C., 415

---

[6] Rule 2:4-1(a) addresses Time: From Judgments, Orders, Decision, Actions and From Rules. "Except as set forth in subparagraphs (1) and (2), appeals from final judgments of courts, final agreements or orders of judges setting as statutory agents and final judgments of the Division of Workers' Compensation shall be filed within [forty-five] days of their entry." Ibid.

A-0756-20

N.J. Super. 551, 577-78 (App. Div. 2010) (citing Cesare v. Cesare, 154 N.J. 394, 412-13 (1998)). "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence. Deference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" A.J. v. R.J., 461 N.J. Super. 173, 180 (App. Div. 2019) (quoting Cesare, 154 N.J. at 411-12).

"We do 'not disturb the "factual findings and legal conclusions of the trial judge unless . . . convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice."'" Gnall v. Gnall, 222 N.J. 414, 428 (2015) (alteration in original) (quoting Cesare, 154 N.J. at 412). However, we review legal determinations de novo. See Slawinski v. Nicholas, 448 N.J. Super. 25, 32 (App. Div. 2016) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

"In custody cases, it is well settled that the court's primary consideration is the best interests of the children." Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007) (citing Kinsella v. Kinsella, 150 N.J. 276, 317 (1997)); see also Bisbing v. Bisbing, 230 N.J. 309, 322 (2017). ("A custody arrangement adopted by the trial court, whether based on the parties' agreement or imposed

14

by the court, is subject to modification based on a showing of changed circumstances, with the court determining custody in accordance with the best interests standard of N.J.S.A. 9:2-4." (citing Beck v. Beck, 86 N.J. 480-496 n.8 (1981))). "The court must focus on the 'safety, happiness, physical, mental and moral welfare' of the children." Hand, 391 N.J. Super. at 105 (quoting Fantony v. Fantony, 21 N.J. 525, 536 (1956)).

N.J.S.A. 9:2-4(d) provides courts must order custody arrangements in accordance with the parties' agreement unless it is not in the best interests of the child. "Parties cannot by agreement relieve the court of its obligation to safeguard the best interests of the child." P.T. v. M.S., 325 N.J. Super. 193, 215 (App. Div. 1999) (citing In re Baby M., 109 N.J. 396, 418 (1988)). "While custody agreements should be taken into account by the court, a trial court must determine whether the agreement is in the best interests of the children." Ibid. (citation omitted) (citing Wist v. Wist, 101 N.J. 509, 512-13 (1986)).

It is also well-settled that a party seeking modification of an existing custody arrangement must demonstrate a change in circumstances. See R.K. v. F.K., 437 N.J. Super. 58, 62 (App. Div. 2014). To determine whether there are changed circumstances, the court must consider the circumstances that existed when the original custody order was entered. Sheehan v. Sheehan, 51 N.J.

A-0756-20

Super. 276, 287-88 (App. Div. 1958). After considering those facts, the court "may ascertain what motivated the original judgment and determine whether there has been any change in circumstances." Id. at 288.

Judge Suh adroitly addressed custody and parenting time issues on the merits that were untimely raised by plaintiff under Rule 4:50-1.[7] We see no basis to disturb her well-reasoned analysis. The judge also thoroughly addressed child support and parochial school expenses. The record shows the Somerset County probation department conducted an audit of the parties' child support

---

[7] Rule 4:50-1 provides for relief from judgment or order and sets forth the grounds of the motion as follows:

> On motion, with briefs, and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment or order for the following reasons: (a) mistake, inadvertence, surprise, or excusable neglect; (b) newly discovered evidence which would probably alter the judgment or order and which by due diligence could not have been discovered in time to move for a new trial under R[ule] 4:49; (c) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (d) the judgment or order is void; (e) the judgment or order has been satisfied, released or discharged, or a prior judgment or order upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment or order should have prospective application; or (f) any other reason justifying relief from the operation of the judgment or order.

account and determined the calculations were proper; and that no fraud was committed by defendant. Judge Suh's decision is based upon substantial credible evidence in the record.

We also reject plaintiff's argument that a plenary hearing was required because there were no material factual disputes. See Conforti v. Guliadis, 128 N.J. 318, 322 (1992); see also J.G. v. J.H., 457 N.J. Super. 365, 372 (App. Div. 2019) ("A thorough plenary hearing is necessary in contested custody matters where the parents make materially conflicting misrepresentations of fact."). Here, plaintiff failed to meet her burden to alter the terms of the residential custody and parenting time previously ordered. Moreover, plaintiff did not demonstrate a material change in circumstances that would justify such alteration. Hand, 391 N.J. Super. at 105 (citing Borys v. Borys, 76 N.J. 103, 115-16 (1978)). Absent such a demonstration, Judge Suh did not abuse her discretion by not conducting a plenary hearing. And, there were no genuine or substantial issues raised relative to the other issues under review requiring a plenary hearing.

B. Defendant's Cross-Appeal

We also reject defendant's claim that Judge Suh erred in denying his request to impute income to plaintiff. Defendant contends plaintiff is a

17

registered nurse and received a two-year "RN degree despite her knowledge that to earn a decent salary she will require a four-year degree." According to defendant, plaintiff should have been imputed income at $80,210.00 annually "to incentivize her to obtain full-time consistent employment."

The standard for modifying support post-judgment under Lepis v. Lepis, 83 N.J. 139 (1980), is "changed circumstances." See generally Donnelly v. Donnelly, 405 N.J. Super. 117 (App. Div. 2009). The judge has the discretion to impute income to a parent found to be unemployed or underemployed and may utilize New Jersey Department of Labor statistics to establish an appropriate level of child support. See Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, Appendix 1X-A to R. 5:6A (2022); see also Bencivenga v. Bencivenga, 254 N.J. Super. 328, 331-332 (App. Div. 1992) (allowing the court to impute income to a noncustodial mother of two children who remarried and had two more children to meet her financial obligations to her first two children).

Based upon our careful review of the record, we discern no abuse of discretion in Judge Suh utilizing plaintiff's reported 2019 annual income of $50,883.00 "as the most accurate and least speculative depiction of her gross income." Defendant did not establish his burden to show plaintiff was

intentionally unemployed or underemployed, and therefore, there was no abuse of discretion in utilizing plaintiff's 2019 income and not an imputed income for her.

Finally, we also disagree with defendant that he should have been awarded counsel fees and costs. In her decision, Judge Suh considered the nine mandatory factors set forth in Rule 5:3-5(c),[8] relevant case law, and analyzed whether plaintiff embarked upon "bad faith conduct." See Borzillo v. Borzillo, 259 N.J. Super. 286, 292-93 (Ch. Div. 1992). The judge also analyzed the factors set forth in Rule 4:42-9(b).[9] Although the judge determined that "a

---

[8]

> (1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions advanced by the parties both during and prior to trial; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.

[9] Rule 4:42-9(b) requires the moving party to submit an affidavit of services addressing factors enumerated under RPC 1.5(a). The court must consider:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill

majority of factors weigh in favor of defendant's application for fees, plaintiff's inability to pay and current unemployment militate against an award of fees."

Fee determinations by trial courts should "be disturbed only on the rarest occasions, and then only because of a clear abuse of discretion." Rendine v. Pantzer, 141 N.J. 292, 317 (1995); see also Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 443-47 (2001) (citing the "deferential standard of review" mandated by Rendine). Judge Suh did not abuse her discretion in denying defendant's application for counsel fees and costs.

We conclude the remaining arguments raised by the parties—to the extent we have not addressed them—lack sufficient merit to warrant any further discussion in a written opinion. R. 2:11-3(e)(1)(E).

---

requisite to perform the legal services properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the result obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.

A-0756-20

Affirmed in part and dismissed in part as to plaintiff's appeal; affirmed as to defendant's cross-appeal.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

21